Francis W. and Clare F. Crary v. Commissioner.
Crary v. Commissioner
Docket No. 1578-68.
United States Tax Court
T.C. Memo 1970-40; 1970 Tax Ct. Memo LEXIS 321; 29 T.C.M. (CCH) 130; T.C.M. (RIA) 70040; February 16, 1970, Filed Roy St. Lewis, 3901 Connecticut, Ave., N.W., Washington, D.C., for the petitioners. Louis F. Nicharot, for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent determined a deficiency of $1,434.99 in petitioners' income tax for the year 1964. After concessions by petitioners, the sole issue in dispute is adjustment (b) of the statutory notice of deficiency, relating to petitioner Francis W. Crary's salary, which reads as follows: (b) It is determined that during the taxable year 1964 you received salary income from the National Defense Transportation Association in the amount of $17,500 rather than $12,750 as reported on your income tax return. Accordingly, your taxable income is increased $4,750. At the trial of *322 this case the parties filed a stipulation of facts and a supplemental stipulation of facts. The supplemental stipulation of facts identified and conceded the authenticity of Exhibits 4 through 22 although respondent objected to their admission on the ground of relevancy and materiality. This objection was taken under advisement. In addition, testimony was given by petitioner. [1]
*323 131 Findings of Fact Those facts stipulated by the parties to be facts are found to be as stipulated. Petitioners Francis W. and Clare F. Crary are husband and wife, residing in Washington, D.C. at the time of the filing of their petition. They filed a joint income tax return for the calendar year 1964 with the district director of internal revenue, Baltimore, Maryland. Petitioner Francis W. Crary, hereinafter sometimes referred to as "petitioner" was employed by the National Defense Transportation Association (hereinafter referred to as "NDTA") from approximately July 1, 1951, until August 31, 1965. Petitioner's salary for the period from September 1, 1963 to August 31, 1965, as agreed upon by him and his employer, was $17,500 per annum and payments in this amount were made to him. Petitioner received no salary from the NDTA subsequent to the termination of his employment with that organization on August 31, 1965. On or about September 1, 1961, petitioner elected to participate in the payroll savings plan initiated by the NDTA for all employees. Petitioner elected to have ten percent of his salary deducted as a contribution to that payroll savings plan. At about the *324 same time the NDTA undertook the purchase of an annuity contract for the benefit of petitioner from the National Life Insurance Company of Montpelier, Vermont. The annuity contract, naming petitioner as the annuitant and owner and bearing an issue date of January 1, 1961, stated that upon payment of five annual premiums of $4,000 each the annuitant would receive monthly payments of $129.30 during his lifetime, with 120 installments certain, beginning on the specified retirement date of January 1, 1966. A written contract of employment was entered into by petitioner and NDTA in September, 1963. This contract has not been introduced in evidence. [2] On the theory that this contract provided for a contribution of $4,750 by petitioner to the payment of premiums on the annuity policy and that such a provision did not accurately reflect the intent of the parties, [3] the general counsel of NDTA in November, 1963 prepared an amendment to the contract of employment a "new paragraph 4" to be substituted for "existing paragraph 4." The "new paragraph 4" provided that "the association hereby agrees to pay the additional premiums due on said policy, to-wit: $4,000 on January 1, 1964 and $4,610.11 *325 on September 1, 1964." This amendment was sent by counsel to the president of NDTA with the recommendation that it be signed. However, the president refused to sign it and it was never executed on behalf of NDTA and the original contract of September 1963 (which is not contained in the record before us) remained in full force and effect without amendment. *326 At or about this time the relations between petitioner and the officers of NDTA who were then in control of its affairs became strained and unfriendly. Petitioner ceased being executive vice-president of NDTA in 1964 and became a consultant. Sometime during 1963 or 1964, certain undisclosed officers of NDTA gave petitioner to understand that NDTA would not make the final premium payment due on his annuity policy in 1964 unless petitioner made a contribution toward annuity premiums in the amount of $4,750 before the date the last premium became due. Petitioner received a check from NDTA dated August 5, 1964, for $4,750. The check contained the following statement: "Salary - 8/16-12/25/64, inclusive, less CPSP." Petitioner gave NDTA a check bearing the same date, August 5, 1964, for $4,750. All premium payments were made on petitioner's annuity policy. The parties agree that if a payment or payments of $4,750 had not been made on petitioner's annuity policy, petitioner's annuity benefits would have been reduced by an amount approximately equal to that payment. Petitioner received the full benefits provided for by this policy from a time at least as early as 1966 until the time *327 of the trial of this case. 132 On their 1964 income tax return petitioners reported net income from the NDTA as follows: *NDTA net wages… $12,750 (17,500 - 4,750) * * * *Note. Pay in the amount of $4,750 representing net salary for period August 16, 1964 to December 25, 1964 was returned to Employer (NDTA) for payment under a pension plan * * *. On their income tax return for 1966, petitioners took an exclusion from annuity income in the amount of $4,750. In 1964 petitioner received $17,500 as salary payments from the NDTA. Opinion KERN, Judge: In his brief petitioner's counsel states the issue herein as being "whether NDTA, a tax exempt membership organization which has been taken over by a small self-serving group through rump and secret sessions and railroad actions, can cheat an employee out of $4,750 with full sanction of the IRS and whether it is right and proper for the United States Government/IRS to take sides in such a situation against the employee." In his "Reply to Respondent's Brief" petitioner's counsel states that there are two questions in this case: (a) "Can a taxpayer be charged a tax on income he did not in fact receive in pocket?"; and (b) "Can *328 a tax-exempt organization cheat an employee out of $4,750 with the full knowledge and approbation of the IRS? Should the IRS aid and abet the cheating by imposing a tax on the money that has not yet been received in pocket?" That part of petitioner's brief entitled "Argument" reads in its entirety as follows: Petitioners believe this case, as presented in the Petition, the Reply and the Stipulations - if thoroughly and objectively evaluated by the Court and all the Stipulations thoroughly studied - speaks for itself and, therefore, Petitioners submit this Brief without argument. We begin our discussion of this case by coming out foursquare against employer (tax exempt or otherwise) cheating their employees (by rump and secret sessions or by any other method) either with or without the knowledge, sanction, approbation and aid of the Internal Revenue Service or of any other agency of the United States Government. However, this statement of principle has to do with matters outside our jurisdiction and does not settle the issues of this case as raised by the pleadings and presented by the facts of record. There is no question but that the $4,750 involved herein was received by *329 petitioner from NDTA during the taxable year as part of his salary and that on the same day he executed a check payable to NDTA in the same amount to reimburse it for premiums paid or to be paid by NDTA on an annuity policy which named petitioner as annuitant and owner. As we understand petitioner's contention, it is not that the $4,750 was not received by him as part of the salary NDTA had agreed to pay him, but that since it was immediately repaid by him to NDTA it should not be considered as income taxable to him even though it was used by NDTA to pay premiums on petitioner's annuity policy or to reimburse it for premiums already paid. [4]
The reasons suggested by petitioner for his immediate repayment of the $4,750 to NDTA were, so far as we are able to fathom petitioner's arguments, as follows: (1) a provision in his contract of employment with NDTA required such repayment but this provision did not reflect the intent of the parties and the execution of an amendment to the contract rectifying this mistake was fraudulently refused by the officers *330 of NDTA, and (2) this contract of employment did so provide but his consent to the contract with this provision in it was obtained by threats made to him by certain unnamed officers of the NDTA to the effect that unless the repayment was made NDTA would not continue with the payment of premiums on the annuity policy, and (3) false statements made to him to the effect that he was not the owner of the annuity policy and unless NDTA made payment of the premiums (which it would not make unless the $4,750 was repaid to it) he would lose the benefits of the annuity. Petitioner's "reasons," inconsistent and incoherent as they are, might be relevant to an argument that the payment by him of the $4,750 to NDTA constituted a loss occurring because of reprehensible and illegal activities of unspecified officers of NDTA. Cf. Joseph M. Sperzel, 52 133 T.C. 320. However petitioner has not claimed any loss deduction, has not proved by competent evidence that he is entitled to such a deduction, and makes no contention that such a deduction should be allowed. [5] As we have stated, his position is that for tax purposes the payment to him of salary in the amount of $4,750, which he admits was in *331 fact made, should be considered as not having been made because an equivalent amount was immediately paid by him to his employer from his own funds because of expenditures made or to be made by his employer for his benefit. In our opinion this position is not sustained by the law or the evidence which we may properly consider in this proceeding. Decision will be entered for the respondent. Footnotes
1. Some 16 days before the trial of this case petitioner obtained the issuance of four subpoenas directing four individuals to appear at the trial of this case and testify. Two days before the trial of this case, a motion was filed on behalf of these individuals to quash the subpoenas on the ground that they were improperly served in violation of Rules 44(d) and 60(b)(2) of this Court. Some four days before the trial petitioner obtained the issuance of another subpoena addressed to one of the four already served. A motion was filed to quash this subpoena on the ground that it was improperly served in violation of Rule 44(d) of this Court. A hearing on these motions was held the day before the trial herein pursuant to proper notice. Petitioner's counsel did not appear at such hearing but notified the Court informally by a telephone call to the Clerk of the Court that he had no objection to the granting of the motions to quash. Upon a showing by counsel for the movants that the service of these subpoenas was improper and in violation of the rules of this Court, the motions to quash were granted. No further effort was made by petitioner or his counsel to obtain the issuance of subpoenas and there was no indication at the trial by petitioner's counsel that he wished to adduce the testimony of any witness other than petitioner.↩
2. Most of the facts found in this and the succeeding paragraph are gleaned from petitioner's exhibits 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 16, 17 and 18, as identified in a supplemental stipulation which also identified exhibits 14, 15, 19, 20, 21 and 22. Respondent objected to the admission of all these exhibits. The objection is sustained as to exhibits 14, 15, 19, 20, 21 and 22 and is hereby overruled as to the other exhibits identified by the supplemental stipulation. ↩
3. This theory is inconsistent with oral testimony given by petitioner at the trial to the effect that such a provision was intentionally included in the employment contract at the insistence of certain unnamed officers of NDTA who "threatened that if I didn't sign a contract to pay $4,750 to my annuity that I wouldn't get my annuity" since the annuity was not his.↩
4. Its use for this purpose is shown by petitioner's computation of his taxable income from the annuity in his 1966 tax return.↩
5. Petitioner has never referred in any way to section 403(b), I.R.C. 1954↩, and the competent evidence contained in the present record does not warrant the findings of fact justifying a conclusion on our own motion that the sum of $4,750 received by him as salary should be excluded from his taxable income.